ARCHIE C. FISK, RESPONDENT, *v.* A. B. PATTON, APPELLANT.

PRACTICE.—FINDINGS.—FACTS AND LAW SEPARATELY STATED.—In findings, where the facts are found and then in the same paper the court immediately proceeds to state the conclusions of law and make its decree in accordance therewith, there is a substantial compliance with the statute which requires findings of fact and conclusions of law to be separately stated.

PLEADING.—EVIDENCE.—ALLEGATA ET PROBATA.—Where the complaint averred an express trust and the findings showed an express trust, which findings were not excepted to, and the court found as a conclusion of law that there was a resulting trust and made a decree in accordance therewith, when it appears that the same decree would have been rendered whether the trust was held to be express or implied, the decree will not be reversed.

TRUST.—PURCHASE FOR ANOTHER.—REPUDIATION.—Where the court found that the defendant held in his own name property which belonged to himself and others, that it was purchased by them jointly and for the benefit of all, but the title taken in defendant's name to be disposed of for the benefit of all, but after getting the property in his own name he denied the existence of any trust, claimed it as his own, and was disposing of it and converting the proceeds to his own use, he is a trustee and it makes no difference whether the lower court called the trust express or resulting.

CORPORATIONS.—ULTRA VIRES.—DEALING IN LAND.—Under section 2272, 2 Comp. Laws 1888, providing the objects for which corporations may be formed, but that no corporation shall have power to enter into as a business the buying and selling of real estate, but which affixes no penalty for the act, a foreign corporation which engages in the business of buying and selling real estate in Utah Territory, but takes the title to the land in the name of a trustee, does not forfeit its title to such real estate or lose the right to enforce the trust.

ID.—STOCKHOLDERS.—REMEDY.—*Semble* if a trustee for a corporation is violating his trust, any stockholder of the company may bring an action against the trustee, joining the corporation as a defendant, and cause the trustee to be removed, and the property held by the trustee sold, and have the proceeds equitably applied.

ID.—VOLUNTARY ASSOCIATION.—QUASI-PARTNERSHIP.—*Quaere* in this case, where several persons, stockholders in a corporation, associate themselves together for the purpose of buying and selling real estate in order to pay off the debts of the corporation, what interest has the corporation in the subject matter of the suit, and why should it be made a party?

APPEAL from a judgment of the district court of the first district. The opinion states the facts, except the findings are here given more fully. They were as follows:

In the year 1888, defendants Patton, Swans, Strayer, Holmes and York organized for the purchase of real estate for profit, under the laws of Iowa, the Interstate Land and Town Company, which incurred obligations to over $50,000, and for the purpose of paying them and of discharging the liabilities of the individual members agreements were made that land should be purchased in Ogden City, and laid out, platted and placed upon the market for sale, but being informed that under the laws of Utah Territory a corporation could not deal in real estate, the said corporators took the title as hereinbelow stated to Nob Hill and Nob Hill Annex additions to Ogden City, Utah, and agreed that the proceeds should be applied: *First*, to the payment of the purchase price of said property; *second*, to the payment of the corporate indebtedness of the said corporation; *third*, the remainder to be divided among the individual stockholders of said corporation according to the amount of property held by each one. On April 24, 1889, in pursuance of the above agreement, York, one of the incorporators, after negotiation with one Robinson, made a contract for the pur-

chase of the land with him and executed to him notes for $108,000, and on April 29, 1889, Robinson deeded to York lots and blocks in said additions, and York took the conveyance with the distinct understanding and agreement that it was subject to the same terms as the contract, and not a merger thereof, in trust for himself and associates.   On August 1, 1889, York retired, assigning his contract upon the land to Fisk, the plaintiff, Swans, Patton, Strayer and Holmes, and conveyed the land to Patton alone, and at the same time, as a consideration for the assignment of the contract and of the conveyance to Patton, the plaintiff, Fisk and Swans, Strayer and Holmes all agreed to indemnify York from payment of any of the notes, and Patton, to further secure York, executed a mortgage on the land deeded to him for $35,-000, which mortgage York assigned to Robinson. Patton at the time he took the conveyance had full knowledge of all the facts and circumstances, and took the same with the distinct understanding and agreement that he held the same in trust for the plaintiff and his other associates, and then repudiated his trust.   The court found that a resulting trust arose as to Patton in favor of and for the benefit of the stockholders of the said company.

*Messrs. Kimball and Allison* and *Higbee and Emerson,* for the appellant.

*Messrs. Miller and Maginnis, Mr. F. S. Schoonover* and *Mr. L. R. Rhodes,* for the respondent.

ANDERSON, J.:

The plaintiff brought this action against the defendant A. B. Patton, and also united with him as defendants

J. R. Strayer, J. R. Holmes, J. H. Holmes, Robert Robinson, W. R. Swan, and the Interstate Land & Town Company, as co-defendants. Patton alone appeared and made a defense. The material portions of the complaint alleged, in substance, that in the year 1888 the defendants, A. B. Patton, W. R. Swan, J. R. Strayer, J. R. Holmes, J. H. Holmes, and A. M. York, organized a corporation, under and by virtue of the laws of the State of Iowa, called the "Interstate Land & Town Company." That the object of said company was the purchase and sale of real estate for profit. That said incorporation incurred debts to the amount of over $50,000, and for the purpose of paying the same, and discharging the liability of the individual members of said corporation, it was agreed that land should be purchased in the city of Ogden, Utah, and laid out and platted and sold for the benefit of said corporation and its incorporators. But the incorporators being advised that, under the laws of Utah Territory, the corporation could not deal in real estate in this Territory, the contracts, deeds, etc., were made in the names of the incorporators, or some member thereof, with the understanding or agreement that, after the properties were sold, as contemplated by all the parties thereto, the proceeds should be first applied to the payment of the purchase price of the property, then to the payment of the corporate indebtedness, and the balance, if any, to be divided between the stockholders of the company according to the amount of stock held by each.

That the plaintiff became the holder of a large amount of the stock of said company in July, 1889. That in March, 1889, the defendant Patton purchased certain real estate in section 9, township 5, range 1 W., in Weber county, in trust for himself and associates, taking the

title in his own name, which he platted into blocks and lots, a part of which has been sold, and a part of which is still unsold. But as to this tract the court held that Patton was the absolute owner in his own right, and, as no appeal is taken to the decision of the court as to this tract of land, no further notice will be taken of it in this opinion. The complaint further alleges that, on the 24th day of April, 1889, the said A. M. York, acting for and in behalf of the holders of the stock of the said Interstate Land & Town Company, as trustee therefor, contracted with Robert Robinson and Thomas Cahoon for the purchase of certain real estate in section 27, township 6 N., range 1 W., for which the said York executed his promissory note to Robinson, who acted for himself and Cahoon, in the sum of $108,000. This contract contained the terms of sale, the time and manner of payment, etc. The complaint further alleges that on the 29th day of May, 1889, Robinson, in furtherance of the contract, deeded to York certain real estate, describing it. That York took the conveyance subject to the terms of the contract, and in trust for himself and associates. That on the 1st day of August, 1889, York assigned the Robinson contract to the plaintiff, W. R. Swan, A. B. Patton, J. R. Strayer, J. H. Holmes, and J. R. Holmes, and on the same day also conveyed the real estate deeded to him by Robinson to the defendant Patton, and withdrew from the enterprise. That at the same time, and as a consideration for the assignment of the contract, and for the conveyance to Patton, the plaintiff and the defendants W. R. Swan, J. R. Strayer, J. H. Holmes, and J. R. Holmes entered into a written agreement with York, by which they agreed to pay the notes York had executed to Robinson; and that, as a further security to York, Patton executed his individual note to York for $35,000, and secured it by a mortgage on the real estate

deeded to him by York, which mortgage York assigned to Robinson.

That Patton took said conveyance with the understanding and agreement that he held the same in trust for the plaintiff and his other associates, and with full knowledge of all the facts and circumstances and the conditions under which the conveyance to him was made. That thereafter the defendant Patton sold a portion of the land in said section 27 known as "Nob Hill" and "Nob Hill Annex" additions to Ogden City, and was about to convert the proceeds to his own use, and had already appropriated a large portion of the proceeds to his own use, and that he threatened to sell the remainder of the property and convert the proceeds to his own use and benefit; and asking that he be removed as trustee, that he be required to account for all sales made by him, and that he be enjoined from disposing of any of the property held by him as trustee, and that a receiver be appointed to take charge of the real estate, notes and mortgages in his hands, and for general relief. The defendant Patton, by his answer, admitted the indebtedness of the land and town company as alleged, but denied that he took the title to the real estate in controversy in the character of trustee for himself and his associates, stockholders in the Interstate Land & Town Company, or for the purpose of carrying out the provisions of the contract made by York with Robinson and Cahoon; and denied there was any understanding or agreement that the property should be conveyed or held by him as trustee; and averred that he purchased the property for himself only, and that he held the title in his own name, and in his own right, free from any trust; and that his associates in the land and town company had no interest, equitable or otherwise, in the property.

The court, in its findings of fact, found that the

allegations of the complaint were substantially true. Its findings were, in substance, as follows: (1) That on the 24th day of April, 1889, A. M. York, acting for the stockholders of the Interstate Land & Town Company, a corporation organized under the laws of the State of Iowa, and as trustee threrefor, entered into a written contract with Robert Robinson and Thomas Cahoon for the purchase of a part of section 27, township 1 N., range 1 W., in Weber county, for which York executed to Robinson his promissory note for $108,000. (2) That on the 26th day of May, 1889, Robinson and Cahoon, pursuant to the contract, conveyed to York, as trustee for said stockholders, a portion of real estate described in the contract, and in pursuance of its provisions. (3) That on the 31st day of July, 1889, York, with the advice and consent of the stockholders, conveyed to Patton certain described lots and lands in Nob Hill and Nob Hill Annex additions to Ogden City, Utah, and being part of the premises conveyed by Robinson and Cahoon to York. (4) That at the time of the conveyance from York to Patton, and as a consideration therefor, Alexander H. Swan, Will R. Swan, J. R. Holmes, the defendant A. B. Patton, and the plaintiff, Fisk, in behalf of and as agents for the stockholders of the land and town company, entered into a contract or bond of indemnity in writing, whereby they agreed to pay to Robinson and Cahoon the notes York had executed to Robinson, and to save harmless the said York from the same. That at the time of the execution of the deed from York to Patton, and of the contract of indemnity, the defendant, Patton, executed to York his promissory note for $35,000, and secured the same by a mortgage to York on the real estate conveyed to him by York, which notes and mortgage York assigned to Robinson and Cahoon as collateral security for the notes originally given by York

to Robinson and Cahoon, all being parts of one transaction. That, as a part of the foregoing transaction, York assigned the contract of April 24, 1889, made with Robinson and Cahoon to W. R. Swan, J. R. Strayer, J. H. Holmes, J. R. Holmes, the plaintiff, A. C. Fisk, and the defendant, A. B. Patton, in trust for the benefit of the stockholders of the land and town company.

The court further found that Patton had violated the terms and obligations of his trust, and is denying its existence, and that the interest of the stockholders of the land and town company required that the said Patton be removed from his position as trustee. As a conclusion of law, the court found that a resulting trust was created upon the real estate conveyed by York to Patton for the benefit of the stockholders of the Interstate Land & Town Company in proportion to the amount of stock held by each in said company. The court decreed that Patton be removed from his position as trustee; that he convey all the real estate conveyed to him by York on the 31st day of July, 1889, remaining undisposed of at the commencement of this suit, to the receiver appointed by the court; that he make a report to the court of all sales made by him, and what disposition has been made of the proceeds of the same; and that he turn over to the receiver all moneys, notes, mortgages, and other property remaining in his hands arising from any sale or disposition of the property. It was further decreed that the receiver, out of the proceeds of the sales of the real estate, and other property which might come into his hands arising out of said trust, pay (1) the costs, expenses, and attorney's fees of his trust and receivership; (2) the purchase money due or to become due on the contract of April 24, 1889, between Robinson and Cahoon and York; (3) the debts of the Interstate Land & Town Company, if there should be sufficient for that purpose; if not, then *pro rata;*

(4) the remainder, if any, to the stockholders of the land and town company in proportion to the amount of stock held by each, the decree to be subject to modification as the equity and justice of the cause and the rights of the parties may require.

The appeal in this case is by Patton alone, he being the only defendant who answered, and the only one against whom a decree was rendered. The appeal is from the judgment of the lower court, and the record consists of the judgment roll only, and hence the conclusive presumption is that the evidence warranted the findings of fact made by the court. Counsel for appellant contend the judgment of the district court should be reversed because the findings of fact and conclusions of law are not separately stated, as provided in section 3380, p. 288, 2 Comp. Laws. We think, however, there was a substantial compliance with that statute in this case.

It is next contended that the pleadings and facts found do not support the conclusions of law, nor the decree; that the complaint charged the defendant as the trustee of an express trust; and that, under the averments of the complaint, the court could not find that the defendant took the land in controversy charged with a resulting trust. The complaint does not, in terms, aver that the defendant was the trustee of an express trust, and the facts averred in the complaint, and found by the court, may well be construed to justify the conclusion reached by the court. When the plaintiff and the defendant Patton, together with certain other holders of the stock of the land and town company, on behalf of themselves and the other holders of its stock, assumed the payment of the York notes, which were executed for the purchase price of the property, they, and those for whom they acted, became, to all intents and purposes, the purchasers of the property; and when, with the

advice and consent of all the parties interested, York, who then held the legal title to the property in controversy in his own name, but as trustee for the others, conveyed it to Patton to be held by him in his own name, and to be sold for the benefit of all, we think a resulting trust was created upon the real estate for the benefit of the stockholders of the land and town company. 2 Pom. Eq. Jur. §§ 1037, 1038, and cases there cited. The argument of counsel for appellant is in effect that, under the pleadings and the facts as found, the district court should have found, as a conclusion of law, that the defendant held the real estate as the trustee of an express trust, if he held it as a trustee at all.

It is not contended that the facts found were not established by the evidence,—the evidence indeed is not in the record; nor is it pretended that the decree is inequitable; nor that any injustice has been done the defendant, nor that any different decree would or should have been rendered if the court had held that the facts established an express instead of a resulting trust. If, then, it be conceded that the court should have held it to be an express, and not a resulting, trust, yet if the final result would have been the same, or substantially so, and no injustice has been done the appellant, should such an error be held to be ground for reversal in an equity case? We think not. Appellate courts do not sit for the purpose of merely theorizing about the law. Their duty is to look into the record and consider, not so much whether technical or possible errors may have been committed, as to see that substantial justice has been done. In this case the court found that the defendant Patton held in his own name property belonging to himself and certain others; that it was purchased by them jointly, and for the benefit of all, and the title taken in his name, to be disposed of by him for the common benefit of the owners; that, after getting

the property in his own name, he denied the existence
of any trust, claimed the property as his own, and was
disposing of it, and converting the proceeds to his own
use, and threatening to dispose of the remainder in the
same way. It would be a reproach to the administration
of the law if a court of equity should fail to administer
the proper relief in such a case, or if the appellate court
should set aside its action, if it is apparent and undis-
puted that justice has been done.

But it is contended that the court by its judgment,
sanctioned the buying and selling of real estate in this
Territory by the defendant corporation, and that this was
error; and we are referred to section 2272, p. 4, 2 Comp.
Laws 1888, which provides that a corporation "shall not
have power to enter into, as a business, the buying and
selling of real estate." It will be observed that this
statute, while it denies to a corporation the power to
engage in buying and selling real estate as a business,
affixes no penalty, by forfeiture or otherwise, for its
violation. The buying and selling of real estate by a
corporation is not a crime under this statute, nor is the
business an immoral one; and, while a stockholder might
by proper proceedings prevent a corporation from engag-
ing or continuing in the business of buying and selling
real estate, we do not think that the corporation forfeits
its title to real estate bought in violation of the statute
to one who, having obtained title as trustee, denies his
trust, and converts the property to his own use. We
are of the opinion that any stockholder may bring his
action against such trustee, as was done in this case, for
the removal of the trustee, and for an accounting, and
that the court may grant such relief as equity demands.
In this case the corporation did not purchase the real
estate in controversy. Being in debt in the sum of $50,-
000, the holders of its stock, as an association or syndi-

cate, purchased the real estate for the purpose of paying off this indebtedness from expected profits in the sale thereof, and dividing the remainder among themselves in proportion to the amount of stock held by each. We do not think this was such a violation of the letter or spirit of the statute as to enable Patton, in whom the title was placed as trustee, to appropriate the property to his own use in fraud of the rights of his associates in the enterprise. The judgment of the district court is affirmed.

BLACKBURN, J., concurred.